IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GRANT FARMER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 11-5621 |
| ARAMARK CORPORATION, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                 **FEBRUARY 3, 2012**

Presently before the Court is Defendant, ARAMARK Corporation's[1] ("Aramark"), Motion to Dismiss the Complaint of Plaintiff, Grant Farmer ("Farmer"). For the following reasons, Defendant's Motion will be granted in part and denied in part.

**I.     FACTS**

Farmer, an African-American former Aramark employee, asserts claims of race discrimination, harassment, and retaliation against Aramark under 42 U.S.C. § 1981 ("Section 1981"), and the New Jersey Law Against Discrimination, N.J. Stat. §§ 10:5-1 to -49 ("NJLAD"). He also asserts a common law claim for intentional inflection of emotional distress. Farmer alleges that Aramark discriminated against him based on his race by not posting two vacant Concessions Director positions and one Concessions Manager position, thereby denying him the

---

[1] Defendant submits that Farmer incorrectly named "ARAMARK Corporation" as the Defendant. Defendant asserts that ARAMARK Sports, LLC, not ARAMARK Corporation, employed Farmer. As a result, the proper corporate Defendant is ARAMARK Sports, LLC. Plaintiff does not deny this assertion in his Response. In fact, he does not address this issue. Accordingly, we will grant Aramark's request that Farmer be ordered to amend his Complaint to substitute ARAMARK Sports, LLC for Aramark Corporation as the proper Defendant.

opportunity to apply for these positions, and by terminating his employment.  Farmer further avers that Aramark retaliated against him for complaining of race discrimination by reassigning him to another nearby facility, and also by terminating his employment.[2]

Specifically, Aramark employed Farmer as a Concessions Manager at Citizens Bank Park ("CBP") and then later at the Wells Fargo Center ("WFC"), both of which are located in the same sports complex in Philadelphia.  (Compl. ¶¶ 4, 7, 15.)  Farmer started as a part-time Supervisor in 1997, and in 2002 was hired as a Concessions Manager.  (Id. ¶ 7.)  During Farmer's employment, one Concessions Director position at CBP became available in 2008, another Concessions Director position became available at CBP in 2011, and Aramark created a new Concessions Manager position at CBP in 2011.  (Id. ¶¶ 6, 11).  Aramark, however, did not post these positions, and, as a result, Farmer did not apply for them.  (Id.)

Farmer avers that in April 2010, his then supervisor, David Lippman ("Lippman"), a white male and the Concessions Director, told an Aramark Human Resource Manager, Quashan Lockett, an African-American male, that Farmer was "incompetent, untrustworthy, and a disgrace, and should not be working at Aramark."  (Id. ¶ 8.)  Shortly thereafter, Farmer lodged an internal complaint of race discrimination against Lippman.  (Id. ¶ 9.)  Farmer asserts that other race discrimination complaints had been lodged against Lippman, but despite such, Aramark promoted him and transferred him to California.  (Id. ¶ 10.)  Elin Salinger, Aramark's Director of Human Resources, was assigned to investigate Farmer's complaint, but she did not find any evidence of discrimination.  (Id. ¶¶ 12-13.)

---

[2]In his Response to Aramark's Motion, Farmer concedes that his claim "under the NJLAD must be dismissed."  (Pl.'s Resp. Mot. Dismiss at 1, n.1.)  He further states that he is no longer pursuing a claim for intentional infliction of emotional distress.  (Id.)  Accordingly, both claims will be dismissed.

Farmer asserts that in October 2010, in retaliation for having lodged the complaint against Lippman, Aramark reassigned him from CBP to the WFC, a facility that was considered a "smaller" account. (Id. ¶ 15.) Farmer states that eight months later on June 10, 2011, he told Aramark's District Manager, Brian Hastings ("Hastings"), that his then supervisor, Sean Hennesey ("Hennesey"),[3] wanted him fired. (Id. ¶ 16.) Farmer states that "[d]uring the weekend of June 17-19, 2011, [he] was in charge of a concessions area in which a bar's receipts came up short when a reconciliation of expected receipts was performed." (Id. ¶ 17.)

Farmer further asserts that a "female Aramark employee, Nikki Viotti, told Farmer that she would resolve the issue, and with that assurance, Farmer left to attend a graduation. Farmer subsequently received a voice mail message from Robert Barr[4] instructing him to take off two (2) days and to return to work on June 23, 2011. When Farmer returned to work on June 23, 2011, he was terminated for not communicating with management." (Id.) Farmer filed the instant action on September 7, 2011.

## II.   STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

---

[3] Both Hastings and Hennessey are Caucasian males.

[4] Farmer does not indicate in his Complaint what position Robert Barr held with Aramark.

conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007).  Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8."[5]  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'"  Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8).  Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level."  Id. at 234 (quoting Twombly, 550 U.S. at 555).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'"  Id. (quoting Twombly, 550 U.S. at 556).

Notwithstanding Twombly, the basic tenets of the Rule 12(b)(6) have not changed.  The Knit With v. Knitting Fever, Inc., No. 08-4221, 2009 U.S. Dist. LEXIS 30230, at *6 (E.D. Pa. Apr. 8, 2009).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations.  Phillips, 515

---

[5]Rule 8(a) of the Federal Rules of Civil Procedure provides that:

> a pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

F.3d at 231.  Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff.  Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

**III.   DISCUSSION**

    **1.   Race Discrimination**

The parties agree that Farmer's race discrimination claim must be analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[6]  Under this framework, to establish a prima facie case of race discrimination, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he had an adverse employment action taken against him; and (4) similarly situated persons who were not members of plaintiff's protected class were treated more favorably or other circumstance gives rise to an inference of discrimination.  Id.  If the plaintiff succeeds in making out a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions.  Id.  The burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reasons were a pretext for discrimination.  Id.

---

[6]The Third Circuit Court of Appeals has applied the same analysis used to evaluate employment discrimination claims brought under Title VII, to employment discrimination claims brought under Section 1981, because "the substantive elements of a claim under Section 1981 are generally identical to the elements of an employment discrimination claim under Title VII."  Brown v. J. Kaz, Inc., 581 F.3d 175, 181-182 (3d Cir. 2009).

Here, Farmer's race discrimination claim is based on his allegations that Aramark refused to post three vacant positions in 2008 and 2011, and that Aramark terminated his employment in 2011. (Compl. ¶¶ 4, 6, 11, 18.) Aramark argues that "[w]hile Plaintiff asserts in a conclusory fashion that Aramark's decisions were discriminatory, Plaintiff has not alleged any concrete facts that would give rise to an inference of unlawful discrimination." (Def.'s Mot. Dismiss at 8.) In support of this argument, Aramark states that Farmer:

> has not identified the alleged decision-makers, their races or any other evidence that they acted with discriminatory animus. He also has not identified any similarly situated employees outside of his protected class who were treated more favorably than him; indeed, by allegedly not posting the Concessions Director or Concessions Manager positions, Aramark would have also denied non-African American employees the opportunity to apply for these positions.

(Id.) Aramark concludes that Farmer, therefore, bases his race discrimination claims on mere speculation and bald assertions about the motives behind its decisions not to post certain positions and to terminate Farmer's employment. (Id.)

However, it is not incumbent upon a plaintiff to plead in his complaint the facts necessary to establish a prima facie case under the burden-shifting framework of McDonnell Douglas. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002). The complaint, however, "must satisfy . . . the simple requirements of Rule 8(a)." Id. at 513. Following the Supreme Court's decision in Twombly, Rule 8(a) now requires that the facts in a complaint plausibly suggest that the pleader is entitled to relief. Wilkerson v. New Media Tech. Charter Sch., 522 F.3d 315, 321 (3d Cir. 2008) (holding that Twombly applies to employment discrimination claims). Accordingly, as noted above, to state a claim, a plaintiff must state enough factual matter, taken as true, to suggest the required element, which does not impose a probability requirement at the

pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element. Phillips, 515 F.3d at 234.

Here, we are of the opinion that Farmer has done so with regard to this discrimination claim. Aramark asserts that Farmer has not alleged any concrete facts that would give rise to an inference of unlawful discrimination. However, regarding the Concessions Manager position that was not posted by Aramark, Farmer avers in his Complaint that Aramark refused to post the vacant Concessions Director position, and instead, created a new position, Concessions Manager, and "selected Jeremy Campbell, a White male, to fill the position." (Compl. ¶ 11.) In addition, Farmer identified Kevin Tedesco, a White male, as having been promoted to the Director of the Lincoln Financial Field position that Aramark failed to post. (Compl. ¶ 6.) Moreover, with respect to Aramark's argument that Farmer failed to plead the identity of the Aramark decision-makers, we agree with Farmer that this issue can be developed in discovery. Thus, viewing all reasonable inferences in the light most favorable to Farmer, we deny Aramark's Motion to Dismiss with respect to Farmer's race discrimination claim. See Phillips, 515 F.3d at 234.

**2.      Harassment**

Aramark next asserts that Farmer has not identified any alleged racially harassing incidents sufficient to support his claim. (Def.'s Mot. Dismiss at 10.) Aramark further states that, at most, Farmer has only alleged that: (1) over the course of at least three years, it failed to post three positions; (2) reassigned him to another facility; (3) its employee, Lippman, once told Lockett that Farmer was "incompetent, untrustworthy and a disgrace, and should not be working at Aramark;" and, (4) terminated him. (Id. at 10.) Aramark argues that nothing in Farmer's Complaint shows that its actions or its employees' actions were based on Farmer's race. To

establish a prima facie case of racial discrimination based on hostile work environment, a plaintiff must prove that: (1) he suffered intentional discrimination because of his race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would negatively affect a reasonable person in the same position; and (5) respondeat superior liability exists. Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990).

Farmer responds that "[a]mittedly, the individual discriminatory events are not severe or pervasive. However, taken together, the discriminatory events alleged by Farmer at the very least, present a question whether defendant's actions were severe or pervasive. The facts relating to these incidents will be developed during discovery, and to the extent that defendant continues to believe Farmer cannot prove a harassment claim, that argument can more approximately be made in the context of a motion for summary judgment." (Pl.'s Resp. Mot. Dismiss at 4.)

Here, there are certainly questions whether the discriminatory events alleged by Farmer are severe or pervasive as Farmer, himself, admits. However, we are of the opinion that Farmer has sufficiently pled this harassment claim at this time to withstand a motion to dismiss. In addition, as Farmer also acknowledges, such a claim would have to be further developed during discovery in order to withstand a motion for summary judgment. We, thus, will deny Aramark's Motion to Dismiss with regard to his harassment claim at this stage of the proceedings.

### 3. Retaliation

To maintain a claim for retaliation, a plaintiff is first required to establish that he has a prima facie case by producing evidence that: (1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) there was a causal connection

between his participation in the protected activity and the adverse employment action.  Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006).[7]  In considering the second element of a prima facie case, the key inquiry is whether the alleged retaliation "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 341 (quoting Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).  The third element of the prima facie case "identif[ies] what harassment, if any, a reasonable jury could link to a retaliatory animus." Id. at 342. Once a plaintiff establishes a prima facie case, the burden shifts to the employer to advance a legitimate non-retaliatory reason for its conduct.  If an employer advances such a reason, a plaintiff then must show that the proffered reason was a pretext for retaliation. Id.

     Aramark argues that Farmer only summarily alleges that he was reassigned to the WFC in October 2010, and terminated from his employment on June 23, 2011, in retaliation for his April 2010 complaint of race discrimination. (Def.'s Mot. Dismiss at 11.)  Aramark further argues that "[o]nce again, Plaintiff fails to make out a prima facie case because Plaintiff does not allege any facts to support a finding that his reassignment or employment termination was causally connected to his April 2010 complaint.  Plaintiff does not identify the alleged decision-makers with respect to employment decisions, identify whether those decision-makers were aware of his complaint, or identify any facts to suggest that their decisions were based on his complaint." (Id.)

     Farmer asserts that the Third Circuit has explained the level of proof necessary to

---

[7]Although Moore is a Title VII retaliation case, the same standard applies in Section 1981 retaliation cases.  See Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010).

establish a casual link in Jenson v. Potter, 435 F.3d 444, 450 (3d Cir. 2006), abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).  The court stated:

> In determining whether conduct was retaliatory, our cases have tended to focus on two factors: (1) the "temporal proximity" between the protected activity and the alleged discrimination and (2) the existence of "a pattern of antagonism in the intervening period."  See Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 288 (3d Cir. 2001) (quoting Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997)).  Timing alone raises the requisite inference when it is "unusually suggestive of retaliatory motive," but even if "temporal proximity . . . is missing, courts may look to the intervening period for other evidence of retaliatory animus."  Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997).  Despite this focus, "[t]hese are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference."  Farrell, 206 F.3d at 280;[8] see also Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 178 (3d Cir.1997) ("The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific.").

Id.

     Farmer states that applying these principles to the allegations in the Complaint, it is clear that he has sufficiently pled a causal link.  In support of his argument, Farmer asserts that the three-month period between the July 2010 conclusion of Aramark's investigation of his race discrimination complaint and his reassignment from CBP to the WFC in October 2010 establishes temporal proximity.  In addition, he contends further that "even if the 11-month period between July 2010 and Farmer's termination in July 2011 gives the Court pause, as recognized by the Third Circuit in Jensen, the totality of the discriminatory actions pled by Farmer is sufficient to establish prima facie causation."  (Pl.'s Resp. Mot. Dismiss at 5.)

     Again, at this stage of the proceedings, we are of the opinion that Farmer has sufficiently

---

[8]Farrell v. Planters Lifesavers Co., 206 F.3d 271 (3d Cir. 2000).

pled allegations to survive a motion to dismiss.  Although we believe that there are certainly questions whether Farmer's allegations establish "temporal proximity" and "a pattern of antagonism in the intervening period," such issues can be developed further in discovery and addressed again in a summary judgment motion.  See Abramson, 260 F.3d at 288.  Accordingly, we deny Aramark's Motion to Dismiss regarding Farmer's retaliation claim.

      An appropriate Order follows.